NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO A.S.

No. 1 CA-JV 25-0117

FILED 03-12-2026

---

Appeal from the Superior Court in La Paz County
No. S1500JD202300003
The Honorable Marcus A. Kelley, Judge

**AFFIRMED**

---

COUNSEL

Southwestern Legal Collective, Phoenix
By Robert Ian Casey
*Counsel for Appellant Mother*

Arizona Attorney General's Office, Phoenix
By Autumn L. Spritzer
*Counsel for Appellee Department of Child Safety*

Whitney Whitney Baldridge Atkinson, Kingman
By Andraya Whitney
*Counsel for Appellee Child A.S.*

_____

**MEMORANDUM DECISION**

Judge Veronika Fabian delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Vice Chief Judge David D. Weinzweig joined.

_____

**F A B I A N**, Judge:

**¶1**      Whitney C. ("Mother") appeals the termination of her parental rights to A.S. ("Child"), arguing the juvenile court erred when it: (1) found the Department of Child Safety ("the Department") made diligent efforts to provide appropriate reunification services and (2) permitted testimony of an undisclosed witness. Because reasonable evidence supports the juvenile court's finding of diligent efforts and the juvenile court did not abuse its discretion in permitting the witness to testify, this Court affirms.

**FACTUAL AND PROCEDURAL BACKGROUND**

**¶2**      This Court views the facts in the light most favorable to sustaining the juvenile court's order. *See Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 2 ¶ 2 (2016).

A.    **The Department Takes Temporary Custody of Child and the Juvenile Court Finds Child Dependent.**

**¶3**      Child was born in August 2019 to Mother and Dylan S. ("Father"). In May 2023, the Department received a report that Mother and Father (collectively "Parents") were exposing Child to substance abuse and domestic violence, prompting a visit to the family home by the Department's investigator and the La Paz County sheriff. Upon arrival, investigators discovered the family was living in a converted school bus without running water and filled with trash. Mother and Child were found at a nearby house known for drug trafficking. Mother appeared to be under the influence and Child was dirty and inappropriately dressed. The Department removed Child from Parents' care and filed a dependency petition. Child later tested positive for methamphetamine.

**¶4**      In January 2024, after a contested hearing, the juvenile court found Child dependent as to Mother and Father based on domestic violence, substance abuse, and unsafe living conditions. The court affirmed a family-reunification case plan with a concurrent plan of severance and

adoption. It directed the Department to provide Parents with reunification services.

**B.      The Department Provides Reunification Services to Parents.**

**¶5**          For the next year and a half, the Department offered Mother and Father various reunification services, including case management, parenting classes, substance abuse treatment and testing, transportation, and supervised visitation. Recognizing that drug testing was difficult because Parents lived in a remote area, the Department arranged random hair follicle tests every few months in place of weekly urinalysis testing. Parents engaged in these services, provided at least two clean hair follicle tests, and established a safe home near Child's paternal grandmother, who was Child's placement.

**¶6**          By November 2024, Mother and Father consistently exercised unsupervised parenting time on the weekends and helped paternal grandmother with Child's bedtime routine most weeknights. The Department informed Parents that it would consider an in-home dependency if they completed final drug tests to confirm their sobriety.

**¶7**          Parents never took the final drug tests. In late December, they had relapsed on methamphetamine and stopped visiting Child. Their home was once again cluttered and dirty. By February 2025, the Department had stopped all unsupervised visits.

**¶8**          In February 2025, Father was arrested for disorderly conduct, and deputies found a methamphetamine pipe in his pocket. A few weeks later, Father was arrested for domestic violence against Mother. Because of Parents' continuing domestic violence, substance abuse, and inability to provide a safe home, Child was placed with a paternal cousin in Florida.

**C.      The Juvenile Court Holds a Hearing on the Department's Motion to Terminate Parental Rights.**

**¶9**          In March 2025, the Department moved to terminate Parents' parental rights on four statutory grounds under A.R.S. § 8-533(B): nine-months' time in care, fifteen-months' time in care, substance abuse, and mental illness.

**¶10**          In June 2025, the juvenile court held a termination hearing over the course of two days. Father did not contest the termination and is not a party to this appeal. Mother contested the termination.

**¶11**     At the hearing, Mother and Father both testified about their history of methamphetamine use and the unclear status of their relationship. Both also testified they would likely have tested positive for methamphetamine in November of 2024, although Mother claimed it was because of her contact with Father or her Adderall prescription.

**¶12**     The Department, through its case manager, expressed continued concerns about Mother's substance abuse, ongoing domestic violence, and inability to maintain a safe home. With respect to Mother's final drug testing, the case manager confirmed she had arranged transportation for Mother to the drug testing, but Mother did not take the test.

**¶13**     Child's cousin in Florida testified she was willing to adopt Child if the juvenile court terminated parental rights. She stated she was able to meet all of Child's needs, including any special needs that might develop.

### D.     The Court Permits an Undisclosed Witness to Testify.

**¶14**     At the hearing, the Department called Deputy DeBoer to testify even though it had disclosed a different deputy as its witness. Mother objected but did not request the court continue the hearing. The court overruled Mother's objection, reasoning that Deputy DeBoer's report had been disclosed to the parties, his name appeared in the report, and he was "in the best position to testify" as the primary author of the report.

**¶15**     Deputy DeBoer testified regarding a domestic violence incident that he responded to in February 2025. He also testified as to a brief encounter with Mother in March 2025 during which Mother appeared to be "coming down from using drugs." Mother did not object to this specific testimony.

### E.     The Juvenile Court Grants the Department's Termination Motion and Mother Appeals.

**¶16**     The juvenile court found the Department had proven the statutory grounds for termination by clear and convincing evidence. The court noted Mother's home remained unsafe for Child after two years. It also found that the domestic violence incident in February 2025, just four months prior to the hearing, demonstrated Mother remained in a dangerous environment where Child could be exposed to violence. Regarding Mother's substance abuse, the court found there was "every indication" she continued to use drugs. The court concluded that

terminating Mother's parental rights was in Child's best interests because it would provide permanency and stability and Child was "infinitely" adoptable.

**¶17** On July 23, 2025, the juvenile court entered a written order terminating Mother's parental rights. Mother timely appealed. This Court has jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

## DISCUSSION

**¶18** A parent's right to custody and control of his or her child is fundamental but not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248 ¶¶ 11–12 (2000). To terminate a parent-child relationship, the juvenile court must find (1) at least one statutory ground under A.R.S. § 8-533(B) exists by clear and convincing evidence and (2) that termination is in the child's best interests by a preponderance of the evidence. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149–50 ¶ 8 (2018). In reviewing the court's termination order, this Court accepts the juvenile court's factual findings if reasonable evidence and inferences support them and affirms the court's conclusions that statutory grounds exist unless clearly erroneous. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478–79 ¶¶ 30–31 (2023) (citations and quotations omitted).

**I.    The Juvenile Court Did Not Abuse Its Discretion in Finding the Department Made Diligent Efforts to Provide Reunification Services.**

**¶19** Mother does not contest the superior court's finding that statutory grounds for termination under A.R.S. § 8-533(B) were met. Instead, Mother argues the Department failed to make a diligent effort at reunification services because the Department's transportation to the drug-testing facility was unreliable.

**¶20** The Department must prove it "made a diligent effort to provide appropriate reunification services." A.R.S. § 8-533(B)(8). To make a diligent effort, the Department must provide a parent with services and "the time and opportunity to participate in programs designed to help [them] become an effective parent." *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). But the Department "is not required to provide every conceivable service or to ensure that a parent participates in each service it offers." *Id.*

**¶21** The case manager testified she arranged transportation for Mother to complete follicle testing on multiple occasions since November 2024, including on the day before the hearing. In addition, the case manager testified she offered to drive Mother to the testing site herself. When Mother told the case manager over the phone that a friend was going to drive her to the drug test the day before the hearing, the case manager nevertheless set up transportation "just in case." Despite these efforts, Mother did not complete the final test requested in November.

**¶22** When asked at the hearing why she had not completed the hair follicle test for seven months, Mother testified she "did not get to it" because she was "prioritizing other things that were more immediate concerns to me." She also testified she "[k]ind of" had transportation to the testing facility but claimed the Department's transportation was "typically a little bit unreliable." Mother acknowledged that paternal grandmother had offered to take her to drug testing in the past. Mother also admitted she used methamphetamine six or seven months before the hearing, which was around the same time the Department requested Parents drug test to return to in-home dependency. Additionally, she acknowledged her hair follicle test might be positive for methamphetamine at the time of her testimony.

**¶23** From this testimony, the juvenile court could reasonably infer Mother did not drug test because she was abusing substances, not because she lacked transportation. This Court will not reweigh the evidence or reevaluate the credibility of witnesses. *Maria G. v. Dep't of Child Safety*, 253 Ariz. 364, 366 ¶ 8 (App. 2022). Reasonable evidence therefore supports the court's finding that the Department provided diligent reunification services, including transportation to drug testing. *See Brionna J.*, 255 Ariz. at 478–79 ¶¶ 30–31.

**II.** **The Juvenile Court Did Not Abuse Its Discretion by Permitting Deputy DeBoer to Testify.**

**¶24** Mother argues the juvenile court abused its discretion by allowing Deputy DeBoer to testify when he was not previously disclosed as a witness. This Court will not reverse the juvenile court's evidentiary ruling "absent an abuse of its discretion and resulting prejudice." *Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 82–83 ¶ 19 (App. 2005). A court abuses its discretion when its decision is "manifestly unreasonable" or based on "untenable" grounds or reasons. *Id.*

**¶25** Here, the juvenile court did not abuse its discretion by allowing Deputy DeBoer to testify. The court's admission of his testimony

was not manifestly unreasonable. He was the primary author of the police report concerning the February 2025 domestic violence incident. His name was listed on the report that was disclosed to the parties. Mother's counsel did not ask to continue the hearing or for other accommodations to address any potential prejudice. *See e.g., Reid v. Reid*, 222 Ariz. 204, 207 ¶ 10 (App. 2009).

**¶26** Nor has Mother shown any prejudice. Mother's speculative and generic arguments about the difficulty of preparing for an undisclosed witness are unpersuasive given that she had a copy of his report. On appeal, Mother specifically complains of his testimony that she appeared to be "coming down from using drugs" when he encountered her in March 2025. But the court told the parties they could object with respect to specific testimony after ruling that Deputy DeBoer could testify. Nevertheless, Mother did not object at the hearing to the testimony regarding the March incident.

**¶27** Under these circumstances, the juvenile court did not abuse its discretion by allowing Deputy DeBoer to testify at the hearing, and Mother has not shown she was prejudiced by his testimony. *See Lashonda M.*, 210 Ariz. at 82-83 ¶ 19; *see also Brenda D. v. Dep't of Child Safety*, 243 Ariz. 437 ¶ 39 (2018).

## CONCLUSION

**¶28** For the foregoing reasons, this Court affirms the termination of Mother's parental rights to Child.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**: JR